```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   AMERICAN CIVIL LIBERTIES UNION
     FOUNDATION,
 4
                     Plaintiff,
 5
                 v.                      12 Civ. 7412 (WHP)
 6
     UNITED STATES DEPARTMENT OF
 7   JUSTICE,
                                         Conference
 8               Defendant.

 9   ------------------------------x

10                                       New York, N.Y.
                                         August 15, 2013
11                                       3:00 p.m.

12   Before:

13        HON. WILLIAM H. PAULEY III

14                                       District Judge

15
             APPEARANCES
16

17   American civil liberties union foundation
          Attorneys for Plaintiff
18   BY:  CATHERINE N. CRUMP
          BRIAN HAUSS
19


20
     PREET BHARARA
21        United States Attorney for the
          Southern District of New York
22        Attorney for Defendant
     CARINA H. SCHOENBERGER
23        Assistant United States Attorney

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1                 (Case called)

 2            THE CLERK:  Appearances for the plaintiff?

 3            MR. HAUSS:  Good afternoon, your Honor.  My name is

 4  Brian Hauss.  I'm joined by my colleague Katherine Crump.

 5            THE COURT:  Good afternoon.

 6            THE CLERK:  For the defendants?

 7            MS. SCHOENBERGER:  Good afternoon, your Honor.

 8  Assistant United States Attorney Carina Schoenberg on behalf of

 9  the defendant, the U.S. Department of Justice.

10            THE COURT:  Good afternoon, Ms. Schoenberger.

11            This is oral argument on the parties' respective

12  motions for summary judgment.  Mr. Hauss, do you wish to be

13  heard?

14            MR. HAUSS:  Yes, your Honor.

15            THE COURT:  Why don't you take the podium.

16            MR. HAUSS:  In the wake of the Supreme Court's

17  landmark Fourth Amendment decision in United States v. Jones,

18  the justice department authored two memoranda regarding the

19  government's use of location tracking technologies.  The ACLU

20  filed a FOIA request for these documents because the FBI's

21  general counsel, Mr. Andrew Weissmann, publicly characterized

22  them as guidance to the field about when they can use GPS going

23  forward, what kinds of arguments they can make if there are

24  challenges, and what Jones means for other types of location-

25  tracking techniques beyond GPS.
```

1          The government now asserts that the documents are

2     devoted almost exclusively to discussions of litigation

3     strategy.  But given the discrepancy between Mr. Weissmann's

4     public remarks and the government's declarations, we believe

5     that in camera review is warranted so that the Court may

6     determine for itself whether or not these documents must be

7     disclosed.

8          The government argues that the documents are protected

9     under exemption 5 and exemption 7(E), but it has failed to

10    demonstrate that either exemption applies.

11         First, with respect to exemption 5, the work product

12    doctrine was meant to protect an attorney's thoughts and other

13    information related to litigation.  It was never meant to

14    protect agencywide guidance regarding government law

15    enforcement policies.

16         THE COURT:  On that note, the memos were certainly

17    written with an eye toward litigation but without discussion of

18    specific claims, I take it because litigation involving the

19    Department of Justice is so widespread among 94 judicial

20    districts.  If you accept that fact, should the government be

21    deprived of the work product privilege because such high-level

22    documents are necessarily general?

23         MR. HAUSS:  Under our reading of the D.C. Circuit's

24    opinions in Coastal States, SafeCard, and In Re Sealed Cases,

25    law enforcement documents drafted outside the context of a

1    particular anticipated or ongoing litigation do not enjoy work

2    product protection.

3         But even if the Court disagrees with that conclusion,

4    I think the core holding of Coastal States, and this was also

5    recognized in Delaney, is that objective, neutral analysis of

6    agency law or governing regulations, such as one might find in

7    an agency manual or question-and-answer document, are not

8    protected work product.

9         The D.C. Circuit made clear in Judicial Watch that

10   only those parts of a document that are work product may be

11   withheld pursuant to exemption 5's work product protection.  If

12   the Court concludes that these documents do contain some

13   protected discussion of the government's litigation strategy,

14   arguments that prosecutors might raise in suppression hearings,

15   it could still hold, and we think it should hold, that guidance

16   to investigators about when they can use GPS or other location

17   tracking techniques would still have to be disclosed.

18        THE COURT:  Does it matter that in Coastal States the

19   memos were fleshing out laws that the DOE was charged with

20   enforcing, whereas the memos here simply are discussing laws

21   that govern's DOJ's law enforcement activities.

22        MR. HAUSS:  We don't think that distinction makes a

23   difference when it comes to work product protections.  DOJ is

24   charged with implementing the government's investigative

25   policies.  Insofar as it does that, the way it implements those

1   policies will affect the privacy rights of Americans.  We

2   believe that to the extent that DOJ has working law on how it

3   is going to implement its Fourth Amendment obligations, the

4   public is entitled to that sort of information.

5        I would like to turn for a moment to the exemption

6   7(E) issue.  We believe that the government has simply failed

7   to carry what is actually a quite heavy burden when it argues

8   that everything in these memoranda discussing GPS and possibly

9   other well-known location tracking techniques, such as cell

10  phone tracking or license plate readers, is nonpublic.  GPS is

11  something that is litigated regularly in district courts and

12  suppression hearings throughout the country.  It is the subject

13  of widespread media commentary.  It is regularly discussed on

14  TV and in the press.

15       When the government says that everything in these

16  documents is in fact nonpublic, we think it has to provide more

17  specificity than it has here.  In that regard we also feel that

18  in camera review is warranted so that the Court may determine

19  whether or not the government has overredacted these documents.

20       I would like to get at what I think the heart is for

21  our request for in camera review here.  There are two disputes

22  about these documents.  The first dispute is what is in the

23  documents and whether or not they contain guidance to

24  investigators about what they can do.

25       We believe based on Mr. Weissmann's remarks that they

 1    contain this sort of information.  In fact, given that Mr.

 2    Weissmann is the general counsel of the Federal Bureau of

 3    Investigation, we think that goes to show that the documents

 4    were meant for investigators and not just for government

 5    prosecutors to use in their litigation.

 6         Additionally, the fact that Mr. Weissmann said that

 7    the documents instruct officials about when they can use GPS

 8    goes to show that they establish clear guidelines for agency

 9    personnel to follow.  As the Second Circuit held in Brennan

10    Center, it is precisely those sorts of clear guidelines that

11    are agency working law and that must be disclosed.

12         THE COURT:  Is there any support for the agency law

13    exception to 7(E)?

14         MR. HAUSS:  We think there is some support for that,

15    your Honor.  In PHE the court suggested that the search and

16    seizure digest in DOJ's obscenity manual was precisely the sort

17    of document that FOIA would ordinarily require to be disclosed.

18    Then they cited a working law case.  But even if the working

19    law exception doesn't apply in the 7(E) context, we still

20    believe there is plenty of public information that the

21    government would be obligated to disclose simply because it is

22    already in the public domain.

23         The government argues that releasing this information

24    would create a circumvention risk.  With regards to certain

25    kinds of information, say, where the government agents can put

D8fsamem
7

1   a GPS tracker on a suspect's car or what streets to install

2   closed circuit TV cameras on, we could see that that is

3   precisely the sort of information that 7(E) was designed to

4   protect and when it should be withheld.

5           To the extent that the documents tell agents when they

6   need a warrant to use GPS, it is hard to imagine how a

7   criminal's knowledge of a warrant requirement would

8   substantially aid their ability to evade law enforcement.  I

9   don't imagine criminals go around wondering if the Department

10  of Justice has established probable cause as opposed to

11  reasonable suspicion.

12          THE COURT:  How do matters like that constitute agency

13  law if ultimately they have to be decided by courts?

14          MR. HAUSS:  To the extent that the matters will

15  ultimately come up before the courts, it might not be agency

16  working law.  I believe this is what the Supreme Court was

17  suggesting in Sears.  But the Supreme Court was very careful to

18  limit Sears insofar as it said that it was only because the

19  general counsel to the agency must become a party to the

20  litigation with respect to which he had made that decision,

21  that that was the only reason that the working law exception

22  didn't really apply there.

23          In that same case they held that decisions not to

24  advance litigation before the board would have to be disclosed

25  because they are working law.  Although many of the issues

1    raised in those memoranda --

2         THE COURT:  Because that's the final decision.  In

3    essence, when the agency decides they are not going to take

4    action in court, that is the end of it.  But how is that

5    analogous to what is presented here?

6         MR. HAUSS:  I think it is analogous, your Honor, to

7    the extent that if DOJ says we are not going to do this

8    particular type of location tracking, that is an issue that

9    will then never appear before any court.  There are certain

10   kinds of instructions that might be in these documents that

11   will simply never arise in litigation.

12        THE COURT:  On that particular point, doesn't the

13   government say that that's where circumvention really comes in,

14   that it is very important that the public not know what the

15   government has decided not to do, because those with an evil

16   intent will take advantage of that synapse, if you will.

17        MR. HAUSS:  Yes, your Honor.  In those circumstances

18   the court would have to apply 7(E) analysis.  The first step of

19   that analysis would be to determine whether or not the

20   information was already public.  Hypothetically, if there was

21   something in that document that said we will no longer do this

22   type of tracking and the public already knew about it, then it

23   would have to be disclosed.  If they said we won't do this type

24   of tracking and the public did not know about it and they

25   create a circumvention risk, then the government would be

9

1    justified in withholding that information.

2         THE COURT:  I hope I'm not butchering the name, but is

3    it Soghoian?

4         MR. HAUSS:  Soghoian.

5         THE COURT:  I am butchering it.  Is the Soghoian case

6    distinguishable or was it wrongly decided?

7         MR. HAUSS:  We would argue primarily that the Soghoian

8    case was wrongly decided, your Honor.  That case was litigated

9    pro se.  For one thing, the district court opinion in that case

10   did not really grapple with the D.C. Circuit decisions in

11   Coastal States, SafeCard, and In Re Sealed Cases and how they

12   affected the analysis there.

13        But I would also suggest that it is possible that

14   Soghoian is distinguishable.  It is hard to know without

15   knowing exactly what was in those documents.  The court there

16   suggested that the documents really were involved with

17   questions of litigation strategy.  Perhaps it is possible in

18   some sense that investigative strategy, to the extent that it

19   really is strategy, could be protected under that umbrella.

20        What is unclear from Soghoian is whether or not those

21   documents contained clear policy guidance to the officials:

22   Don't do X unless Y and Z circumstances apply, say.  In those

23   circumstances I think there is a fair basis for distinguishing

24   Soghoian.

25        THE COURT:  In view of Delaney and In Re Sealed Cases,

10

1   what is left of Coastal States?

2           MR. HAUSS:   In our reading of In Re Sealed Cases, the

3   Coastal States particular case requirement applies when the

4   government acts in the law enforcement context.   When DOJ is

5   preparing documents, it has to connect those documents to a

6   particular anticipated or ongoing prosecution.   Delaney and

7   Schiller, I believe was the other case, were both civil cases.

8   In those contexts the government was really concerned about

9   defending policies in litigation that other people might bring

10  before it.

11          I think that when the government acts as a sovereign,

12  its interest in protecting its documents is more circumscribed.

13  The D.C. Circuit admonished in Senate of Commonwealth of Puerto

14  Rico that it is important for the courts to construe the work

15  product privilege carefully in the law enforcement context

16  because everything the prosecutor does on some level is

17  connected with litigation.   If the work product rules are

18  allowed to expand beyond their proper bounds, then ultimately

19  nothing will be disclosed.

20          THE COURT:   Here isn't the government, in essence,

21  attempting to defend against claims of Fourth Amendment

22  violations?

23          MR. HAUSS:   Yes.   I still think that their interests

24  are lesser simply because they are acting in a law enforcement

25  context.   But even to the extent that the court wishes to

1   protect the government's litigation strategy about how it

2   defends these inevitable suppression hearings that will come

3   up, I think the Court could still draw a rule that protects

4   that sort of information while still requiring disclosure of

5   actual guidance to investigators about what they have to do

6   when they install or use these sorts of location tracking

7   technologies.  I think that is really what was at the heart of

8   the Coastal States, was that the idea of neutral objective

9   analysis is not the sort of thing that the work product

10  doctrine was meant to protect.

11         THE COURT:  Anything further at this time?

12         MR. HAUSS:  No, your Honor.  Thank you very much.

13         THE COURT:  Thank you, Mr. Hauss.

14         Ms. Schoenberger.

15         MS. SCHOENBERGER:  The two documents that the ACLU is

16  requesting in this case are core attorney work product, and

17  they reference specific investigative techniques used by the

18  Department of Justice.  DOJ appropriately redacted them

19  pursuant to exemptions 5 and 7(E), and the declarations that

20  the government has submitted provide a sufficient basis for the

21  Court to grant summary judgment in favor of the government.

22         With respect to exemption 5, the declarations make

23  clear that these documents are the essential type of attorney

24  work product contemplated by Rule 26.  They include the mental

25  impressions of DOJ attorneys, their opinions and theories about

1      the Supreme Court's decision in the Jones case.

2              The declarations describe that these documents were

3      authored specifically to serve as litigation aids for

4      prosecutors, that they talked about potential arguments that

5      may arise in evidence hearings, and that they assess the

6      strengths and weaknesses of alternative positions that

7      litigators may take.  They also expressed that every prosecutor

8      needs to make a case-by-case determination about which

9      strategies are appropriate to use in a specific case.

10             THE COURT:  For work product privilege, does it matter

11     that the lawyers who drafted the memos are discussing legal

12     strategies in prosecutions and not how to defend agencies from

13     affirmative litigation?

14             MS. SCHOENBERGER:  There is no basis to make that

15     distinction, your Honor.  There is no legal tether to hold that

16     there should be a different rule in the criminal context than

17     in the civil context.  The ACLU places great weight on the

18     Coastal States case by saying that they were neutral, balanced

19     agency interpretations of policies, but that is simply not what

20     we have here.  Moreover, the Coastal States case did not create

21     a blanket rule saying that prosecutors have a more

22     circumscribed availability to the attorney work product

23     privilege.

24             THE COURT:  What about the ACLU's argument that these

25     documents receive lesser protection in the law enforcement

1    arena?

2            MS. SCHOENBERGER:  There should be no lesser

3    protection.  These are the types of documents that should be

4    encouraged.  Attorney work product is a doctrine or a privilege

5    that is designed to provide a zone of privacy for lawyers to

6    tease out legal strategies.  When the Supreme Court comes out

7    with an opinion that leaves open a number of questions, we

8    should want our federal prosecutors to be able to explore the

9    implications of a new ruling from the Supreme Court.

10           THE COURT:  Does In Re Sealed Cases draw a line

11   between prosecutors on the one hand who need to be addressing a

12   specific claim and legal advisers protecting government

13   agencies from civil suits on the other?

14           MS. SCHOENBERGER:  What In Re Sealed Cases does is

15   specify that in Coastal States there are two different types of

16   documents, the neutral analyses that were at issue there and

17   then types that look at specific claims of wrongdoing.  It does

18   not set forth a rule saying that prosecutors always have to

19   have a specific claim in mind or even that civil litigants who

20   are not defending a case but rather bringing one need to have a

21   specific claim in mind.

22           The Schiller case out of the D.C. Circuit is

23   instructive.  In that case it was lawyers from the National

24   Labor Relations Board, and the documents at issue were guidance

25   and tips about how to build a case under a specific labor

14

D8famem

 1   statute.  It talked about building defenses but also about how

 2   to handle and bring those types of cases.  That was a case that

 3   came after Coastal States, did not require a specific claim,

 4   and it did not make a distinction between whether the lawyer

 5   was bringing the case or defending against one or simply

 6   serving as a legal adviser.

 7        THE COURT:  Has the D.C. Circuit overruled the

 8   specific claim language in Coastal States?

 9        MS. SCHOENBERGER:  It has not overruled it.  It has

10   left over the question of whether or not it has continued

11   vitality in the context of government prosecutors.

12        THE COURT:  If the work product privilege applies,

13   does that mean that the entire document is protected?

14        MS. SCHOENBERGER:  Yes, your Honor.  In this case the

15   DOJ made a discretionary release of certain information

16   contained in the document.  But under FOIA it did not have an

17   obligation to segregate out factual from legal analysis,

18   because the attorney work product privilege applies to the

19   document in its entirety.

20        THE COURT:  Could there be segregable portions that

21   are not privileged?

22        MS. SCHOENBERGER:  In this case both documents are

23   core attorney work product in their entirety, and there is no

24   portion that would be segregated out from that.  The portions

25   that were segregated out were those that were not covered also

1    by exemption 7(E).

2           Also, I point the Court's attention back to the

3    Soghoian case.  That was a case decided just last year, long

4    after the Coastal States decision came out.  The ACLU posits

5    that the court there did not grapple with Coastal States.

6    That's because it doesn't need to.  It was clear under the

7    authority of Schiller and Delaney that the types of document

8    there, which are very similar to the types of documents here,

9    were protected by the attorney work product.

10          THE COURT:  Sometimes a pro se case is not necessarily

11   at the zenith of the adversarial process, is it?

12          MS. SCHOENBERGER:  That may be true, your Honor.  But

13   the rules of FOIA and the obligations on the government don't

14   change just because one party is not represented.  Moreover, I

15   would point out that the opinion specifies that the pro se

16   plaintiff in that case was a Ph.D candidate, so by no means an

17   unsophisticated party.

18          THE COURT:  Not a lawyer, though, right?

19          MS. SCHOENBERGER:  Not a lawyer, at least as

20   identified in the case.

21          THE COURT:  If the memos at issue here articulate

22   guidelines for law enforcement to follow, why don't they

23   constitute DOJ's working law with respect to location tracking?

24          MS. SCHOENBERGER:  As an initial matter, the

25   government would not concede that there is a working law

1   exception to the attorney work product privilege under

2   exemption 5.  That doctrine has arisen mainly in the context of

3   predecisional documents that are protected by the deliberative

4   process.  Under the Supreme Court's precedent, there is a

5   distinction made between the types of relationships between a

6   predecisional document that becomes policy and other types of

7   privileges that might be covered by exemption 5.

8           It is also a different matter here because, as the

9   Court has already pointed out, ultimately decisions about the

10  constitutionality of the department's actions will be

11  determined by the Court.  Even if these documents provide

12  directives to prosecutors, which they do not, they could still

13  be covered by the attorney work product because they would not

14  be ultimate decisions being rendered by the agency to the

15  public, but rather they would establish positions to be taken

16  in court and ultimately determined by a judge.

17          THE COURT:  What about to the extent they offer

18  guidance about what actions not to take to law enforcement

19  personnel, sort of akin to the decision in Sears not to file an

20  NLRB complaint?

21          MS. SCHOENBERGER:  The documents do not provide any

22  directives to prosecutors about what they can or cannot do.

23  Furthermore, I think the ACLU overstates what the field in this

24  case is.  As you can see on the face of the documents, they are

25  directed to federal prosecutors.  They are guidance for

1    litigating cases and conducting investigations from the

2    lawyer's perspective.  These are not memos that are distributed

3    to FBI agents about what they can and cannot do.

4            The ACLU puts great weight on the comments that were

5    made by the general counsel of the FBI at a law review

6    symposium event.  These were not formal remarks.  Mr. Weissmann

7    was responding casually to an audience question.  The context

8    of his remarks indicates that these are documents that were

9    prepared in anticipation of litigation to address questions

10   that might arise and considering the litigation risk that the

11   Jones decision might create.

12           His remarks were also made before the memos were

13   finalized or distributed.  He didn't reveal any of the contents

14   of the documents.  And while the ACLU seems to interpret his

15   remarks as indicating that they provide policies,

16   interpretations of Fourth Amendment obligations, or directions

17   to FBI agents, they do not, and the declarations that the

18   government has submitted have made that clear.

19           THE COURT:  Why shouldn't this Court review the two

20   memoranda in camera?

21           MS. SCHOENBERGER:  FOIA provides for in camera review

22   and the Court is able to within its discretion.  The government

23   respectfully submits that that is not necessary in this case

24   because of the declarations that have been submitted.  They are

25   sufficiently detailed to allow the Court to make an assessment

1    that the redactions that were made were appropriate.  The Court

2    is, of course, able to review the documents in camera, but it

3    is the government's burden to show that the redactions were

4    appropriate through their declarations, and here the government

5    has met that burden.

6            THE COURT:  For example, with respect to the

7    government's invocation of 7(E), how can the Court determine

8    whether the information in the memo is publicly known without

9    an in camera review?

10           MS. SCHOENBERGER:  The declarations specify that while

11   there are aspects of the techniques that are publicly known,

12   for example, GPS tracking is something that is known publicly,

13   there are details about the way that those investigative

14   techniques are employed that are not publicly known, including

15   where and when and how and with which entities the department

16   works to employee the different techniques.

17           If the Court decides that these documents are properly

18   protected by the attorney work product, it doesn't need to

19   reach the question of whether 7(E) was also properly asserted.

20   But the declarations that are submitted by the government are

21   afforded the presumption of good faith.  The ACLU has not

22   rebutted that presumption.  And the judge may use the

23   declarations alone to make a decision about this case.

24           THE COURT:  In PHE, the D.C. Circuit said that the

25   discussion of search and seizure law was precisely the type of

1    information that was appropriate for release under FOIA.  How

2    is the situation here different?

3          MS. SCHOENBERGER:  I would note that the Court in PHE

4    didn't make any holding about that or actually order that any

5    information would have to be revealed.  It just commented that

6    that information was like other information that would have to

7    be produced under the working law doctrine.

8          To the extent the court there was suggesting that

9    there is a working law exception to exemption 7(E), the

10   government disagrees with that position.  Indeed, this Court

11   has addressed a very similar question in The New York Times

12   case in considering whether the working law doctrine might

13   apply to exemption 1, which covers classified information.

14         There are certain types of documents that regardless

15   of whether they may be subject to disclosure under the section

16   (a)(2) of the Freedom of Information Act, are nevertheless

17   protected because of the concerns that are addressed in the

18   exemptions.  Classified information is an example of that.

19   There could be something that is a clear agency policy but is

20   still classified information that the government is entitled to

21   keep from public disclosure because of the safety concerns that

22   it could raise.

23         7(E) information is very similar.  So even if these

24   documents were directives, if they presented and disclosed the

25   types of law enforcement techniques that are not publicly known

1    or that would reasonably lead to circumvention of the law, then

2    they are entitled to protection regardless of whether they are

3    working law.

4           Here these documents are not working law, and the

5    reasons for that are detailed in the government's declaration.

6    But even if they were, they could still be protected by 7(E),

7    and the working law exception would not apply.

8           THE COURT:  Anything further?

9           MS. SCHOENBERGER:  No, your Honor.

10          THE COURT:  Thank you, Ms. Schoenberger.

11          Do you wish to be heard further, Mr. Hauss?

12          MR. HAUSS:  Yes, your Honor.  Thank you.  I'd like to

13   make just a few quick points, your Honor.

14          First, with respect to the working law exception and

15   how it is applied to the work product doctrine, we believe that

16   the Second Circuit's decision in Brennan Center makes clear

17   that when a document constitutes working law, it then falls

18   outside the scope of exemption 5, and that applies whether or

19   not the particular privilege asserted for exemption 5 is

20   deliberative process, work product, or attorney-client

21   privilege.

22          Second, with respect to segregability in particular,

23   the D.C. Circuit's decision in Judicial Watch held that it does

24   not make sense to employ FOIA segregability to determine which

25   parts of a document are segregable and which are deliberative

1    when the government is claiming work product protection.  That

2    makes sense because work product protects both factual and

3    deliberative material.

4         The court was also clear that it was relying on the

5    district court's finding that the documents were not partially

6    work product, in other words, that the documents included the

7    kinds of information protected by the work product doctrine.

8    It would be unfair, for example, if the Department of Justice

9    were able to sneak some nonwork product information into an

10   otherwise work product protected document and thereby immunize

11   it from FOIA review.

12        Finally, with respect to the importance for in camera

13   review in this case, we concede that it is possible that Mr.

14   Weissmann mischaracterized these documents when he spoke at the

15   University of the San Francisco Law Review Symposium.  But I

16   think his comments at least raise a strong doubt as to exactly

17   what is in these memos.

18        When he talked about them, not only did he say that

19   they tell law enforcement officials when they can use these

20   techniques going forward, he also said that they answer

21   questions such as does Jones apply with respect to boats, does

22   it apply with respect to planes, does it apply at the border.

23   In other words, he suggests that the memos contain precisely

24   the sorts of information that would constitute agency working

25   law and that seem far removed from litigation strategy

22

Defsamen

1   discussions but rather much closer to manual-like policy

2   decisions from the top of the Department of Justice.  That's

3   why we think in camera review is particularly important with

4   respect to the exemption 5 issue.

5            With respect to the exemption 7(E) issue, again, we

6   think that in camera review is necessary here simply because it

7   is impossible to know if the government has gotten over-

8   enthusiastic with the redaction pen.  GPS is such a commonly

9   known technique that it is hard to believe that everything in a

10  55-page document concerning GPS is either nonpublic or so

11  closely bound up with nonpublic information that it cannot be

12  disclosed.

13           Similarly with respect to the memorandum concerning

14  additional investigative techniques, it is possible that

15  memorandum deals with cell phone tracking, license place

16  readers.  If it does, I think the burden is on the government

17  to tell us it involves those kinds of techniques and then

18  explain why information related to those techniques is

19  nonpublic and would create a circumvention risk.

20           Finally, we think that in camera review is

21  particularly important here because the country is currently

22  engaged in an important public debate about the proper extent

23  of government surveillance activities.  These documents have an

24  important role to play in informing that debate.  We therefore

25  think that extra care should be taken to make sure that they

 1    are not inappropriately withheld from the public.

 2              THE COURT:  Thank you, Mr. Hauss.

 3              MR. HAUSS:  Thank you, your Honor.

 4              THE COURT:  Anything further, Ms. Schoenberger?

 5              MS. SCHOENBERGER:  If I can briefly respond, your

 6    Honor?

 7              THE COURT:  Surely.

 8              MS. SCHOENBERGER:  With respect to the Brennan Center

 9    decision, that decision dealt just with the deliberative

10    process and the attorney-client privilege and did not reach

11    whether or not the working law doctrine would apply to attorney

12    work product.  The Sears case, however, does refer directly to

13    attorney work product, and that is a decision that came from

14    the Supreme Court.  There the court said that the documents at

15    issue were entitled to attorney work product privilege

16    regardless of whether or not they were the type of staff

17    instructions that would be subject to disclosure under section

18    (a)(2) of FOIA.

19              Further, in another Supreme Court case, which is not

20    cited in the government's briefs but is the Federal Open Market

21    Committee v. Merrill, the cite there is 443 U.S. 340, the

22    Supreme Court said that there is a distinction between the type

23    of relationship of a predecisional document and a document that

24    loses predecisional status because it becomes policy.  It says

25    that that does not necessarily apply to the other types of

1    privileges under exemption 5.  Another type of privilege that

2    that would cover is the attorney work product privilege for the

3    reasons that I described a little bit earlier.

4           With respect to Mr. Weissmann's remarks, again, I

5    believe that they are being overread by the ACLU.  They have

6    interpreted his remarks to say one thing.  Indeed, they are not

7    inconsistent with what is in the government's declarations.  It

8    is simply that they need to be interpreted in light of the

9    declarations to understand what it is that he was talking

10   about.  Again, he says that they are guidance to the field.

11   But as we can see from the declarations and from the face of

12   the documents, the field there is federal prosecutors and not

13   law enforcement agents within the FBI.

14          Finally, with respect to the redactions made pursuant

15   to 7(E), the ACLU says that it is hard to believe that there

16   would be nonpublic information on every page of the document.

17   But it is not unreasonable to think that there is information

18   that is not public that is unable to be reasonably segregated

19   from the documents.  As the declarations describe throughout

20   the documents, there is factual information about the types of

21   law enforcement techniques that the department is employing

22   interwoven with the legal analysis of what this means in light

23   of the Jones decision.  So the redactions that were made were

24   appropriate, and that can be decided based on the declarations

25   that were put in by the government.

1          THE COURT:  Thank you, Ms. Schoenberger.

2          Counsel, first I want to thank you for your thoughtful

3     arguments and your well-written briefs.  They have persuaded me

4     of one thing at this moment, and that is that I should exercise

5     my discretion to review these two memoranda ex parte.  In order

6     to decide this question, I am going to direct the government to

7     provide the two memoranda to the Court for an ex parte in

8     camera review.  I would presume that you could get those

9     materials to me on Monday of next week.

10          MS. SCHOENBERGER:  Certainly, your Honor.

11          THE COURT:  Very well.  Anything further?  Thank you.

12    Have a good afternoon.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25