```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
AMERICAN CIVIL LIBERTIES UNION :
FOUNDATION,                   :    12 Civ. 7412 (WHP)
                              :
              Plaintiff,      :    MEMORANDUM & ORDER
                              :
        -against-             :
                              :
UNITED STATES DEPARTMENT OF   :
JUSTICE,                      :
                              :
              Defendant.      :
                              :
------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/11/14

WILLIAM H. PAULEY III, District Judge:

Plaintiff American Civil Liberties Union Foundation (ACLU) brings this action against Defendant United States Department of Justice ("DOJ" or "the Government") under the Freedom of Information Act (FOIA). Both parties move for summary judgment. For the following reasons, the Government's motion is granted and the ACLU's motion is denied.

## BACKGROUND

In <u>United States v. Jones</u>, 132 S. Ct. 945 (2012), the Supreme Court held that the installation of a global positioning system (GPS) tracking device on a vehicle constituted a Fourth Amendment search. On February 24, 2012, FBI General Counsel Andrew Weissmann spoke at a symposium hosted by the University of San Francisco Law Review. In response to a question, he disclosed that DOJ was drafting a memorandum which would discuss "when you can use GPS going forward and what kind of arguments can you make if there are challenges . . . as to the application of that decision to ongoing cases." Decl. of John E. Cunningham III, dated

-1-

Feb. 28, 2013, ¶ 18 (ECF No. 10) ("First Cunningham Decl."). He also mentioned that a second memorandum would provide "guidance about what [Jones] means for other types of techniques beyond GPS." First Cunningham Decl. ¶ 18.

Three days later, DOJ distributed to all federal prosecutors the first of the two memoranda that Weissmann had described. See Ex. D to First Cunningham Decl. (ECF No. 10-4). It was authored by Patty Merkamp Stemler, the chief of the DOJ's Criminal Appellate Section, and titled "Guidance Regarding the Application of United States v. Jones, 132 S. Ct. 945 (2012) to GPS Tracking Devices" (the "February memo"). The second memorandum, dated July 5, 2012, was also authored by Stemler and titled "Guidance Regarding the Application of United States v. Jones, 132 S. Ct. 945 (2012), to Additional Investigative Techniques" (the "July memo"). Ex. E to First Cunningham Decl. (ECF No. 10-5). Distribution of the July memorandum was limited to criminal chiefs and appellate chiefs. Both memoranda have all-caps boldface warnings on their front pages cautioning they constitute attorney work product and should not be disseminated outside DOJ. The July memorandum is even more restrictive, instructing its recipients that it should be distributed within their offices only when relevant to an investigation or case.

The Government submitted declarations asserting that the memoranda "were prepared in anticipation of litigation by DOJ officials. . . . [T]he purpose of these memoranda was to analyze the possible implications of [Jones] on ongoing federal criminal prosecutions and investigations that could result in litigation." First Cunningham Decl. ¶ 16. "Both memoranda discuss potential legal strategies, defenses, and arguments that might be considered by federal prosecutors in light of Jones in each type of case discussed." First Cunningham Decl. ¶ 16.

The February memorandum "discusses the ways in which GPS tracking devices are employed in federal criminal investigations." First Cunningham Decl. ¶ 24. The July memorandum discusses ways in which other investigative techniques are used in federal criminal investigations. First Cunningham Decl. ¶ 25. "While the public may know that federal investigators use some of these techniques, the details of their use are not publicly known." Decl. of John E. Cunningham III, dated May 17, 2013, ¶ 8 (ECF No. 17) ("Second Cunningham Decl."). With respect to both memoranda, the Government asserts that the techniques and guidelines discussed are not publicly known and that disclosure could allow individuals to break the law and evade detection by federal law enforcement. First Cunningham Decl. ¶¶ 24-25; Second Cunningham Decl. ¶ 9.

On July 18, 2012, the ACLU made a FOIA request seeking "two Federal Bureau of Investigation ('FBI') memoranda that set forth the FBI's guidance regarding the Supreme Court's decision in United States v. Jones." Ex. A to Decl. of David M. Hardy, dated Feb. 28, 2013 (ECF No. 11-1). On August 15, 2012, the ACLU filed a complaint seeking disclosure of the memoranda. See ACLU Found. v. Dep't of Justice, No. 12 Civ. 6244 (WHP) (S.D.N.Y.). The ACLU voluntarily dismissed that complaint without prejudice on September 17, 2012. The ACLU then filed this action on October 3, 2012.

DOJ determined that both memoranda fell within FOIA Exemption 5, which exempts privileged documents, and Exemption 7(E), which exempts documents that disclose information concerning law enforcement techniques and guidelines. After reviewing them for segregability of non-exempt portions, on December 14, 2012 the Government provided the ACLU with copies of the memoranda redacting all but the introduction from the July

memorandum and all but the introduction and brief summary of Jones from the February memo. First Cunningham Decl. ¶¶ 10, 12, Exs. C-E.

## DISCUSSION

I. Legal Standard

Congress enacted FOIA to "ensure an informed citizenry" and to "check against corruption and hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). FOIA strikes "a workable balance between the right of the public to know and the need of the Government to keep information in confidence." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). On request, the Government must disclose any document that does not fall within any of FOIA's nine enumerated exceptions. See Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7 (2001). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Klamath, 532 U.S. at 7-8 (alteration in original) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). "[C]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989); see also FBI v. Abramson, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed").

"[T]o prevail on a motion for summary judgment in a FOIA case, the defendant agency has the burden of showing . . . that any withheld documents fall within an exemption to FOIA." Long v. Office of Personnel Mgmt., 692 F.3d 185, 190 (2d Cir. 2012) (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Wilner v. Nat'l

Sec. Agency, 592 F.3d 60, 73 (2d Cir. 2009) (quoting Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009)).

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. See Liberty Lobby, 477 U.S. at 255; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment, Liberty Lobby, 477 U.S. at 252, but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted).

Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 122 (2d Cir. 2013) (quoting Gould v. Winstar Commc'ns, Inc., 692 F.3d 148, 158 (2d Cir. 2012)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment must be granted. Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita, 475 U.S. at 586-87). Where, as here, both parties move for summary judgment, each party's motion

"must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

II.  *In Camera* Review

"Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." Carney, 19 F.3d at 812. Declarations from government agencies are "accorded a presumption of good faith." Carney, 19 F.3d at 812 (citation and internal quotation omitted). However, they must be "relatively detailed and nonconclusory." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 488-89 (2d Cir. 1999) (internal quotation omitted).

District courts may review the documents at issue in camera. 5 U.S.C. § 552(a)(4)(B); Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 82 (2d Cir. 2002). "In camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988). "[I]n camera review is appropriate when agency affidavits are not sufficiently detailed to permit meaningful assessment of the exemption claims." PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 252 (D.C. Cir. 1993). In camera review may be appropriate when "the number of records involved is relatively small" and "when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." People for the Am. Way Found. v. Nat'l Park Serv., 503 F. Supp. 2d 284, 307 (D.D.C. 2007).

Understandably, the Government has been unable to describe the documents at issue meaningfully without disclosing their contents. After oral argument, this Court directed the

Government to provide the memoranda for in camera review. The parties' motions for summary judgment are therefore decided based not only on the Government's declarations, but also on this Court's in camera review of the memoranda at issue.

III. Exemption 5

"[I]nter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are exempted from disclosure under Exemption 5. 5 U.S.C. § 552(b)(5). This exception encompasses common law privileges, including attorney work-product privilege. Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005). The Government contends the memoranda constitute attorney work product.

Work-product privilege protects "memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 154-55 (1975). It "enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them at his leisure." Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 126 (D.C. Cir. 1987).

a. "Specific Claim" Requirement

The ACLU argues that, at least in the law enforcement context, work-product privilege applies only when a document is created in response to a specific set of facts and actual claims and that it does not apply to an objective analysis of governing law. Both parties cite primarily to cases from the D.C. Circuit, which has a more developed case law on Exemption 5 and the work-product privilege than the Second Circuit. See NRDC v. EPA, 581 F. Supp. 2d

491, 497 n.7 (S.D.N.Y. 2008) ("[T]he Second Circuit has evidenced a willingness to look to the law of other circuits – particularly the D.C. Circuit – in the area of FOIA, even when it has not specifically adopted other circuits' law.").

The ACLU relies primarily on Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854 (D.C. Cir. 1980). In Coastal States, the plaintiff sought memoranda containing the Department of Energy's (DOE) interpretations of its own regulations, which the DOE withheld under work-product privilege. "[A]n understanding of the function the documents serve within the agency is crucial" to determining whether they were properly withheld. Coastal States, 617 F.2d at 858. The DOE's regional offices sent auditors to regulated firms to ensure regulatory compliance. If the auditors had questions regarding regulatory interpretations, they sent requests for advice to DOE lawyers, who responded in memoranda interpreting regulations in the factual context presented by the auditors. The memoranda were not formal interpretations or binding on the auditors, but the advice was followed consistently. The memoranda were indexed and treated as precedent in later cases, and at times they were "amended" or "rescinded" as if they were binding law.

The D.C. Circuit held that "it is firmly established that there is no privilege at all unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial. . . . [A]t the very least some articulable claim, likely to lead to litigation, must have arisen." Coastal States, 617 F.2d at 865. The court held that documents unrelated to any specific claim were not privileged. Coastal States, 617 F.2d at 865.

In Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124 (D.C. Cir. 1987), the D.C. Circuit reconsidered the "articulable claim" language in Coastal States. The plaintiff in

Delaney was a law firm seeking documents relating to the Government's legal analysis of an IRS program which used statistical sampling to audit large accounts. The IRS produced two memoranda, redacting portions as privileged attorney work product. The plaintiff argued that the privilege was inapplicable because the memoranda did not satisfy the Coastal States requirement that the agency show "that a specific claim had arisen, was disputed[,] . . . and was being discussed in the memorandum." Coastal States, 617 F.2d at 866.

But the D.C. Circuit explained that Coastal States did not create a "blanket rule" that a specific claim must have arisen; it "identified the *function* of the documents as the critical issue." Delaney, 826 F.2d at 127 (emphasis added). The court explained that the majority of the memoranda in Coastal States "formed a body of interpretive law to which the DOE accorded precedential effect in later cases. A small minority of the documents advised DOE auditors how to proceed further with specific investigations where illegal violations had been uncovered." Delaney, 826 F.2d at 127. The "specific claim" requirement drew a distinction between the two categories of memoranda. The memoranda in the larger group were not privileged because they offered only neutral analysis, while the smaller set offered advice and therefore might be privileged. But in the facts of Delaney, applying a specific claim requirement "would ignore the function performed by the withheld material." Delaney, 826 F.2d at 127. Unlike the memoranda in Coastal States, which "were like an agency manual, fleshing out the meaning of the statute [the DOE] was authorized to enforce," the memoranda in Delaney "advise[d] the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome." Delaney, 826 F.2d at 127. Therefore the memoranda were attorney work product even though they did not discuss specific claims.

A decade later, the D.C. Circuit reiterated that "Coastal States' 'specific claim' language [w]as an 'observation'" and that "Coastal States 'did not intend to lay down [a] blanket rule'" requiring specific claims. In re Sealed Case, 146 F.3d 881, 885 (D.C. Cir. 1998) (quoting Delaney, 826 F.2d at 127). While the specific claim requirement in Coastal States was used to identify memoranda that "advised DOE auditors how to proceed with specific investigations of suspected wrongdoers," Delaney dealt with the "very different situation[]" where "government lawyers acted not as prosecutors or investigators of suspected wrongdoers, but as legal advisors protecting their agency clients from the possibility of future litigation." In re Sealed Case, 146 F.3d at 885.

Therefore "the specific-claim requirement only applies when the documents at issue have been prepared in 'connection with active investigations of potential wrongdoing' and the attorney (or agent thereof) preparing the document acted 'as [a] prosecutor[] or investigator[] of suspected wrongdoers.'" United States v. ISS Marine Servs., Inc., 905 F. Supp. 2d 121, 136, (D.D.C. 2012) (alterations in original) (quoting In re Sealed Case, 146 F.3d at 885). "By contrast, a more lenient specificity standard applies when the attorney (or agent thereof) preparing the document acted 'as [a] legal advisor[] protecting the [attorney's] clients from the possibility of future litigation.'" ISS Marine Servs., 905 F. Supp. 2d at 136 (alterations in original) (quoting In re Sealed Case, 146 F.3d at 885. "It is often prior to the emergence of specific claims that lawyers are best equipped either to help clients avoid litigation or to strengthen available defenses should litigation occur." In re Sealed Case, 146 F.3d at 886. A specific claim requirement "would undermine lawyer effectiveness at a particularly critical stage of the legal representation." In re Sealed Case, 146 F.3d at 886.

The ACLU argues that because the memoranda at issue were written for prosecutors and discuss criminal investigations, the specific claim requirement applies. But it is the <u>function</u> of the documents that is critical, not their intended audience. <u>Delaney</u>, 826 F.2d at 127; <u>Coastal States</u>, 617 F.2d at 858. The memoranda were prepared for the benefit of prosecutors, but they are the functional equivalent of the memoranda in <u>Delaney</u>. They discuss not how prosecutors should interpret and apply the laws they are charged with enforcing – the criminal code – but how to defend the Government against accusations of unlawful searches or seizures. It is immaterial that these claims often arise in the context of suppression motions by criminal defendants instead of lawsuits filed against the Government. The memoranda discuss the legal arguments prosecutors should make when criminal defendants claim the Government violated the Fourth Amendment and the potential weaknesses of those arguments. As in <u>Delaney</u>, they "advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome. . . . This is precisely the type of discovery the [Supreme] Court refused to permit in <u>Hickman v. Taylor</u>, 329 U.S. 495, 513 (1947)." <u>Delaney</u>, 826 F.2d at 127. The memoranda are privileged "because they relate to foreseeable litigation arising out of the government's criminal investigations." <u>Soghoian v. U.S. Dep't of Justice</u>, 885 F. Supp. 2d 62, 72 (D.D.C. 2012).

    b. <u>Agency Working Law</u>

The ACLU also argues that even if the memoranda are privileged, they still do not fall within Exemption 5 because they constitute the DOJ's "working law" with respect to location-tracking techniques. The "working law" exception springs from <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132 (1975). The plaintiff sought memoranda discussing the NLRB's

reasons for filing or not filing a complaint in response to charges of unfair labor practices. The NLRB withheld the memoranda under Exemption 5, asserting executive privilege, attorney-client privilege, and work-product privilege. However, the Supreme Court found that "the public is vitally concerned" with the reasons that "supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the 'working law' of the agency and have been held by the lower courts to be outside the protection of Exemption 5." Sears, 421 U.S. at 152-53. "Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." Sears, 421 U.S. at 153 (internal quotation omitted). The Court held that memoranda concluding no complaint should be filed must be disclosed because that decision has "the effect of finally denying relief to the charging party." Sears, 421 U.S. at 155. However, memoranda directing the filing of a complaint fell within Exemption 5 because "the subject matter, theory, and interpretation" in those memoranda "will ultimately be ventilated" through the course of NLRB decisions and judicial review. Sears, 421 U.S. at 156. They therefore do not constitute "agency working law."

The memoranda in this case are not agency working law. Unlike the NLRB's decision not to file a complaint, which had the effect of a final disposition, the DOJ's interpretation of the Supreme Court's decision in Jones has no legal effect; the results of the DOJ's arguments will be borne out in the courts. See Families for Freedom v. U.S. Customs & Border Prot., 797 F. Supp. 2d 375, 396 (S.D.N.Y. 2011) ("[T]he secret law doctrine in FOIA cases generally arises in which agencies are <u>rendering decisions</u> based on non-public analyses."

(emphasis in original)).

IV. Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . [1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) only exempts investigative techniques not generally known to the public." Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 815 (9th Cir. 1995). However, an agency does not have to release all details concerning law enforcement techniques just because some aspects of them are known to the public. Barnard v. Dep't of Homeland Sec., 598 F. Supp. 2d 1, 23 (D.D.C. 2009).

In contrast to law enforcement techniques, law enforcement guidelines may only be withheld if their disclosure "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); see also Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 680 (2d Cir. 2010). "[T]he government must demonstrate, by detailed affidavit or other evidence, that release would reasonably risk circumvention of the law." Elec. Frontier Found. v. Dep't of Def., No. C 09–05640 SI, 2012 WL 4364532, at *3 (N.D. Cal. Sept. 24, 2012).

The ACLU is correct that the Government's affidavits do not provide sufficient information to determine whether either requirement is met. After in camera review of the memoranda, this Court concludes that the February memorandum does not fall within Exemption

-13-

7(E) because its topic is limited to GPS tracking and it does not reveal any investigative techniques not generally known to the public. Law enforcement's use of GPS tracking is well known by the public. See, e.g. Adam Cohen, "The Government Can Use GPS to Track Your Moves," Time, Aug. 25, 2010, available at http://content.time.com/time/magazine/article/0,9171,2015765,00.html. Jones itself describes the use of GPS tracking in a way that is comparable to the February memo. Jones, 132 S. Ct. at 948; id. at 963-64 (Alito, J., concurring). Neither does the February memorandum contain guidelines for the use of GPS tracking that, if disclosed, could reasonably be expected to lead to circumvention of the law.

However, the July memorandum contains detailed information concerning various investigative techniques not widely known and therefore falls within Exemption 7(E). DOJ's differing treatment of the memoranda emphasizes this point. While the February memorandum was distributed to all federal prosecutors, the July memorandum was distributed only to criminal chiefs and appellate chiefs with a note that its "discussion of sensitive investigative techniques" should be distributed within U.S. Attorney's Offices "only when relevant to an investigation or case."

    a. Government's Interpretation of its Constitutional Obligations

In a rehash of its "secret agency law" argument, discussed above, the ACLU contends that even if the July memorandum falls within Exemption 7(E), that exemption cannot protect the Government's interpretation of its constitutional obligations because FOIA "represents a strong congressional aversion to secret agency law" and "an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." Sears, 421 U.S. at 153.

As discussed above, the July memorandum does not have the force and effect of law. Moreover, "the concept of 'secret law' arose in the different context of Exemption 5 . . . and the now-abrogated exemption known as 'High 2,' which shielded 'predominantly internal' materials whose disclosure would 'significantly ris[k] circumvention of agency regulations or statutes.'" N.Y. Times Co. v. U.S. Dep't of Justice, 872 F. Supp. 2d 309, 317 (S.D.N.Y. 2012) (alteration in original) (quoting Milner v. Dep't of Navy, 131 S. Ct. 1259, 1263 (2011)). "[T]here is no textual basis in FOIA for a freestanding 'secret law doctrine.'" N.Y. Times, 872 F. Supp. 2d at 317. This argument is therefore unavailing.

V. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "This provision requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes." FBI v. Abramson, 456 U.S. 615, 626 (1982). In camera inspection is appropriate to determine whether portions of documents may be released while keeping exempt portions secret. U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 768 (1989). After in camera review, this Court is satisfied that the DOJ has disclosed all reasonably segregable portions of the memoranda.

CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is granted and the ACLU's motion for summary judgment is denied. The February and July memoranda are exempt from public disclosure under Exemption 5. The July memorandum is

also exempt from disclosure under Exemption 7(E). The Government has disclosed all reasonably segregable portions of both memoranda. The Clerk of Court is directed to terminate all pending motions and mark this case closed.

Dated: March 11, 2014
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Catherine N. Crump, Esq.
Nathan F. Wessler, Esq.
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
*Counsel for Plaintiff*

Carina H. Schoenberger, Esq.
U.S. Attorney's Office, SDNY
86 Chambers Street
New York, NY 10007
*Counsel for Defendant*